UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| SARA D. GOODWILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00407-LEW |
| | ) | |
| ANYWHERE REAL ESTATE INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE MASIELLO GROUP LTD. d/b/a BETTER HOMES AND GARDENS REAL ESTATE / THE MASIELLO GROUP, | ) ) ) ) ) | |
| Defendant and Counterclaimant | ) ) | |

## ORDER ON MOTION TO DISMISS

In this action, Plaintiff Sara Goodwill alleges age discrimination in employment against Defendant The Masiello Group d/b/a Better Homes and Gardens Real Estate. She also alleges that the Masiello Group is liable to her and to a putative class of plaintiffs for the violation of Maine wage and employment law, alleging, in principle part, that the Masiello Group misclassifies its realtors as independent contractors.

The matter is before the Court on motions[1] to dismiss (ECF Nos. 7/17) filed by a separate defendant, Anywhere Real Estate, Inc. Defendant Anywhere Real Estate argues that Ms. Goodwill has overreached by naming it as a defendant because it was not Ms. Goodwill's employer.

---

[1] Anywhere filed its Second Motion to Dismiss following Ms. Goodwill's filing of her First Amended Complaint.

## Background

The Defendant Anywhere Real Estate Inc. ("Anywhere") is a publicly traded real estate conglomerate that sits atop a network of real estate franchise brands, including Better Homes and Gardens, Century 21, Coldwell Banker, ERA and Sotheby's. Each of these brands is a distinct business entity owned by Anywhere.

As the parent of real estate franchising companies, Anywhere engages in a number of real-estate-related enterprises and in-house efforts designed to assist its subsidiaries and their real estate partners, such as by delivering leads, providing training in the area of agent recruitment and retention, and providing educational training and development to individual realtors. As alleged, Anywhere is also the creator of its subsidiaries' franchise agreements. These franchise agreements require that franchisees utilize certain documents and systems that establish their policies and procedures and related guidelines.

Ms. Goodwill alleges that Anywhere has the power to terminate the franchise agreements issued by its subsidiaries and that this power forces franchisees—such as her former employer Masiello Group—to comply strictly with Anywhere's policies, procedures, and guidelines. Goodwill also alleges that Anywhere's power over its subsidiary brands and their franchisees acts as a kind of straight jacket that gives Anywhere de facto control over a franchisee's day-to-day operations. As alleged:

> 72. The relationship between [Anywhere] and its individual franchisees . . . is such that the economic success of each individual franchisee is fully intertwined with [Anywhere]'s broader operations. The economic reality is that franchisees cannot operate as a successful business without participation in activities such as training programs, conferences, marketing and business development activities, information sharing, and use of specific proprietary technology, all of which are owned, operated, and/or controlled by [Anywhere], even where participation in such activities is nominally voluntary.

2

73. Individual [Anywhere] franchisees . . . are managed and operated on a day-to-day basis by a Responsible Broker, sometimes also called a Managing Broker or Designated Broker. The Responsible Broker is required to attend orientation and training sessions provided by [Anywhere]. This training covers a range of aspects of business operations, including retention, coaching, and mentoring of Realtors.

74. [Anywhere] requires franchisees of its brands . . . participate in their state's Multiple Listing Service, or MLS, which are privately-owned databases established by cooperating real estate brokers to provide data about properties for sale. This requirement mandates that Realtors follow certain rules of conduct and circumscribes their behavior.

75. [Anywhere] also requires franchisees of its brands . . . comply with the Code of Ethics and Standards established by the National Association of Realtors ("NAR"), a private trade organization for real estate brokers and agents.

76. Requiring that Realtors comply with the NAR Code of Ethics and Standards effectively necessitates membership in that organization and imposes a disciplinary structure on Realtors. In practice, the requirement that franchisees adhere to the Code of Ethics and Standards established by NAR cannot be satisfied without NAR membership. This, in conjunction with the requirement that franchisees participate in the Multiple Listing Service, means that all Realtors working at any [Anywhere] franchise locations . . . must subject themselves to significant oversight by NAR.

77. [Anywhere] requires its franchisees of its brands . . . to notify [Anywhere] . . . of complaints or disciplinary actions, including from a federal, state, or local licensing or regulatory body. [Anywhere] also requires its franchisees . . . to respond to any [Anywhere] inquiries regarding consumer complaints.

78. [Anywhere] collects, stores, and transmits information about individual Realtors, including Realtor contact information and data concerning listings, sales, and other transaction information, some of which are provided to [Anywhere] via its wholly owned subsidiaries and franchisees.

79. [Anywhere] provides an online platform through which consumer complaints about individual Realtors are submitted directly to [Anywhere]. Consumers wishing to submit a complaint select an office location and then a specific agent or broker name from a drop-down menu before providing detail about their issue or complaint. This information is collected by [Anywhere] directly from consumers, and [Anywhere] states that it may share this information with a franchisee.

80. [Anywhere] also advertises and promotes itself based on the success of its franchisees and the Realtors working for those franchisees. For example, press

> releases issued by [Anywhere] announce awards received by individual Realtors and refers to those Realtors with language that highlights their connection to [Anywhere], such as calling them "[Anywhere]'s affiliated agents, owners, and employees" or "[Anywhere]-affiliated leaders."

First Am. Compl. (ECF No. 12). [2]

Goodwill alleges that the foregoing features of Anywhere's involvement in franchisee affairs "show[s] that [Anywhere] is involved with the management of individual Realtors. In particular, [Anywhere]'s tracking of individual Realtor information and performance, together with the level of control that [Anywhere] exerts over the day-to-day operations of its franchisees, demonstrates that [Anywhere] has direct involvement with the personnel management of individual Realtors." *Id.* ¶ 81.

## Discussion

Defendant Anywhere argues that Ms. Goodwill has failed to state a claim because her allegations are insufficient to generate a plausible inference that Anywhere is a proper defendant on claims related to Goodwill's employment with Masiello Group.

To avoid dismissal, a plaintiff must plead in her complaint "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying this standard, the Court will accept all factual allegations as true and consider whether the facts, along with reasonable inferences that may arise from them, describe a plausible, as opposed to merely conceivable, claim. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628

---

[2] In response to Anywhere's initial motion to dismiss (ECF No. 7), Ms. Goodwill filed a First Amendment Complaint in which she amplified her allegations concerning the relationship between Anywhere and Masiello Group.

F.3d 25, 29 (1st Cir. 2010). The Court will not accept as true, however, statements that are merely conclusory recitations of legal standards. *Medina-Velazquez v. Hernandez-Gregorat,* 767 F.3d 103, 108 (1st Cir. 2014).

Plausible "means something more than merely possible," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012), but is "not akin to a probability requirement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Furthermore, "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted).

The claims at issue arise under both Maine law (26 M.R.S. §§ 591-A, 621-A, 626, 626-A, 629, 664 and 5 M.R.S. § 4572) and federal law (29 U.S.C. § 623). The answer to the issue presented, therefore, depends in part on state law and in part on federal law. Under federal law, nominally distinct entities may be treated as either one solitary, "integrated" employer or as separate but nevertheless "joint" employers. *Burnett v. Ocean Properties*, *Ltd.*, 987 F.3d 57, 68 (1st Cir. 2021).

The First Circuit has used the following four-factor test to assess integrated enterprise contentions, without ruling out the possibility of additional factors: (i) "centralized control over labor relations"; (ii) "interrelation between operations"; (iii) "common management"; and (iv) "common ownership." *Burnett v. Ocean Properties*, *Ltd.*, 987 F.3d 57, 65 (1st Cir. 2021). "[T]he test should be applied flexibly, placing special emphasis on the control of employment decisions." *Id.* Plaintiff's allegations at most suggest a remote possibility of integration. Her allegations do not plausibly depict centralized control by Anywhere over Masiello Group labor relations. The allegations would not justify an inference that a reasonable person in Ms. Goodwill's position would think that she worked for Anywhere or that she was subject to the direct management or

oversight of anyone employed by Anywhere. The allegations also fall short of depicting plausible interrelation of operations. Anywhere oversees a network of subsidiaries, whereas Masiello Group conducts localized real estate operations. As alleged, Anywhere's contributions to Masiello Group's business operations are limited to the provision of policies, procedures, educational materials, training conferences, and the like, all traditional attributes of a franchise relationship. The allegations do not depict shared employees, common records, shared equipment or office space, financial entanglements, or outsourcing to Anywhere of in-house bookkeeping or even human resources. Common management is another factor that the allegations do not plausibly suggest. The First Amended Complaint affords no basis to infer that Anywhere's managerial personnel played any role in the day-to-day operation of Masiello Group's realty business, let alone in matters related to Ms. Goodwill's alleged discriminatory termination or other employment decisions. Finally, the allegations do not suggest common ownership between Anywhere and Masiello Group. For these reasons, I find that Goodwill fails to allege plausible employer integration as between Anywhere and Masiello Group.

The joint-employer test "recognizes that the business entities involved are in fact separate but that they share or co-determine [the] conditions of employment." *Id.* at 68. Factors commonly employed to evaluate a joint employer contention include: "supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignments; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits and overtime; and authority over the number of employees." *Rivera-Vega v. ConAgra, Inc.*, 70 F.3d 153, 163 (1st Cir. 1995). As with the integration factors, Ms. Goodwill has failed to allege a plausible joint employer scenario. The allegations she relies on—essentially Anywhere's provision of hand-

crafted policies and training-technology systems, information collection and sharing, and professional ethics oversight—establish a typical franchise scenario, albeit it one catered to professional services. The provision of these documents, tools, and systems and the collection of data do not support the inference that Anywhere is a participant, let alone an authoritative force, when it comes to employee relations between Masiello Group and its realtors such as in regard to matters associated with compensation, assignments, discipline, retention, or the like.

In relation to Ms. Goodwill's state law claims, it is necessary to consult Maine law. The Maine Supreme Judicial Court (the "Law Court") has held, consistent with federal law, "that the economic reality and the totality of the factual circumstances in a particular case must guide a court's determination of the employers' status rather than formalistic labels or common law notions of employment relationships." *Director of Bur. of Labor Stds. v. Cormier*, 527 A.2d 1297, 1300 (Me. 1987). In *Cormier*, the Law Court affirmed the Superior Court's reliance on factors demonstrating that an employer "exercise[d] . . . overall operational and administrative direction . . . through its centralized management functions." *Id.* The functions in question included hiring, payment, advertisement of job openings, and the conduct of new employee orientation. *Id.* at 1299. *Cormier* is solid authority that the Law Court would approve the application of factors consistent with those discussed previously to evaluate the existence of either an integrated- or joint-employer scenario. However, *Cormier* does not suggest that the standard to be applied under Maine law is any looser than what is applied for federal claims.

**Conclusion**

For the foregoing reasons, Anywhere Real Estate's Motions to Dismiss (ECF Nos. 7/17) are **GRANTED**. Counts I through IV are **DISMISSED** against Anywhere Real Estate, **WITHOUT PREJUDICE**. Counts VII and VIII are **DISMISSED** against Anywhere Real Estate **WITH PREJUDICE**.[3]

**SO ORDERED**.

Dated this 15th day of June, 2023.

                                            /s/ Lance E. Walker
                                            UNITED STATES DISTRICT JUDGE

---

[3] Ms. Goodwill has stated her intention to voluntarily dismiss her breach of contract and conversion claims (Counts VII and VIII) to the extent they are asserted against Anywhere Real Estate. Resp. at 2 n. 2. Counts V and VI do not run against Anywhere Real Estate.