UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SARA D. GOODWILL, ) | |
| ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | No. 2:22-cv-00407-SDN |
| ) | |
| THE MASIELLO GROUP ) | |
| LIMITED, d/b/a BETTER HOMES ) | |
| AND GARDENS REAL ESTATE/ ) | |
| THE MASIELLO GROUP, ) | |
| ) | |
|     Defendant ) | |

**RECOMMENDED DISMISSAL**

Almost three years into what should have been a relatively straightforward employment case, I issued an order requiring Sara D. Goodwill to show cause "why her case should not be dismissed for her repeated and ongoing failure to comply with" my discovery orders and her lawyer to show cause "why disciplinary proceedings should not be initiated against him for" lack of candor. ECF No. 106. Having now reviewed Goodwill and her lawyer's response to my order to show cause as well as The Masiello Group's reply, I recommend that the Court (1) dismiss Goodwill's case with prejudice as a sanction for her stubborn noncompliance with the discovery process and my orders and (2) send information about her lawyer's lack of candor to the Maine Board of Bar Overseers for potential disciplinary action.

**I. Background**

In September 2022, Goodwill initiated this case in state court, asserting age discrimination claims against her former employer The Masiello Group, as well as

1

Maine wage and employment law claims on behalf of herself and a putative class. *See* ECF No. 2-1. The Masiello Group removed the case to this Court based on federal question and diversity jurisdiction, *see* ECF No. 1, Goodwill amended her complaint, *see* ECF No. 12, and the Court dismissed Goodwill's claims against a second defendant—Anywhere Real Estate, *see* ECF No. 22.

In July 2023, I issued a scheduling order setting a discovery deadline of December 14, 2023. *See* ECF No. 23. I granted various extensions of the pretrial deadlines, *see* ECF Nos. 32, 36, and, in December 2023, I extended the discovery deadline to September 27, 2024, *see* ECF No. 41.

In February 2024, Goodwill's counsel moved to withdraw from the case citing a breakdown of the attorney-client relationship. *See* ECF No. 42. Following a hearing on that motion in April 2024, which Goodwill attended, I granted her counsel's motion to withdraw, stayed all remaining scheduling order deadlines, and set a deadline of May 11, 2024, for Goodwill's new counsel to enter an appearance or for her to file a pro se entry of appearance. *See* ECF Nos. 43, 49-50.

After the May 11, 2024, deadline passed without any filing by Goodwill, The Masiello Group filed a motion for default judgment, which the Court denied. *See* ECF Nos. 51, 52. In July 2024, still having received no communications or filings from Goodwill, I entered an order requiring her to explain in writing why her case should not be dismissed for lack of prosecution. *See* ECF No. 53. On July 22, 2024, Goodwill's new counsel—who happens to be her son—entered his appearance. *See* ECF No. 55.

In August 2024, following a conference of counsel, I entered an amended scheduling order, setting a March 31, 2025, discovery deadline. *See* ECF Nos. 60, 63. At The Masiello Group's request, I held a discovery hearing in October 2024, following which I ordered the parties to meet and confer and submit a joint status report regarding various discovery disputes and the remaining deadlines. *See* ECF No. 68. Only The Masiello Group filed a status report. *See* ECF No. 69.

On December 4, 2024, I held another discovery hearing, following which I ordered Goodwill to submit complete discovery responses to The Masiello Group by December 18, 2024, along with her availability for a deposition in January 2025. *See* ECF No. 73. I warned Goodwill that I would likely authorize The Masiello Group to file a motion for sanctions if she did not comply with my order. *See id.*

On December 20, 2024, I held a status conference at The Masiello Group's request to address Goodwill's inadequate discovery responses. *See* ECF No. 79. Following that conference, I ordered Goodwill, by December 30, 2024, to provide signed authorizations that would enable The Masiello Group to obtain her tax return documents, files, and communications directly from the IRS and her tax return preparers and to submit to me unredacted copies of communications between herself and her attorney prior to his representation for an in-camera review. *See* ECF No. 80 at 2. I warned Goodwill for a second time "that if [she] continued to drag her feet in producing important and long overdue discovery responses, I would not hesitate to authorize" The Masiello Group "to file a motion for sanctions." *Id.* at 2. I also reminded Goodwill's counsel, when he tried to deflect blame onto The Masiello Group,

that he was free to raise such issues in a properly filed request for a discovery hearing under Local Rule 26(b). *See id.* at 2-3. And, finally, I ordered the parties to submit a joint status report by December 31, 2024. *See id.* at 2. Once again, only The Masiello Group filed a status report by the deadline. *See* ECF No. 81.

On January 7, 2025, following my in-camera review of Goodwill's unredacted communications with her counsel, I concluded that the redactions were seemingly justified but that Goodwill's privilege log provided insufficient context. *See* ECF No. 88 at 1-2. I ordered Goodwill to produce, by January 10, 2025, to The Masiello Group "the privilege log [she] submitted to me as well as a revised privilege log" consistent with my order. *Id.* at 2-3. On January 8, 2025, I also further extended the scheduling order deadlines at The Masiello Group's request, including the discovery deadline, which I extended to August 7, 2025. *See* ECF No. 90.

On January 13, 2025, The Masiello Group filed a request for a discovery hearing in which it indicated that Goodwill had not fully complied with my orders to sign authorizations for it to obtain documents directly from her tax preparers and to produce the privilege logs. *See* ECF No. 92. In lieu of scheduling another discovery hearing, I authorized The Masiello Group to file a motion for sanctions. *See* ECF No. 93.

On January 14, 2025, Goodwill filed a motion seeking an extension of time to comply with my orders due to her counsel's January 10, 2025, diagnosis of COVID-19, which purportedly had prevented him from diligently representing her and addressing discovery matters. *See* ECF No. 94. I denied the motion, noting that I

4

would not "stay discovery or continue deadlines that have already passed." ECF No. 95.

On May 6, 2025, I granted The Masiello Group's motion for sanctions in part. *See* ECF No. 99.  I noted "that Goodwill's discovery violations [were] persistent and severe, that her misconduct [was] deliberate and [had] prejudiced both The Masiello Group and the Court, and that she [had] provided no legitimate mitigating excuses for her ongoing noncompliance." *Id.* at 6.  Nevertheless, because discovery did not close until August 7, 2025, and there was "still time for [Goodwill] to recognize the error of her ways, get back on track, and finish discovery so that the Court [could] reach the merits of her claims," I declined to recommend the dismissal of Goodwill's case as The Masiello Group had requested.  Instead, I ordered Goodwill, by June 6, 2025, to (1) pay The Masiello Group $6,750 to cover the reasonable attorney's fees it had needlessly incurred as a result of her discovery abuses and (2) file a status report "outlining in detail her efforts to come into compliance with my previous orders and to respond to any outstanding discovery requests." *Id.* at 9-10.  I also warned Goodwill that if she did "not demonstrate significant progress in fulfilling her outstanding discovery obligations, her case" would "likely be dismissed." *Id.* at 10.

On June 6, 2025, Goodwill filed a status report in which she indicated—through her counsel and "under penalty of perjury"—that she had (1) executed and submitted requests for copies of her tax returns to the IRS on December 30, 2024; (2) executed and provided authorizations to The Masiello Group to obtain her tax returns directly from her tax preparers; (3) managed to recover her 2019-2024 tax returns

5

with the assistance of a "forensic-accounting vendor" and would produce them to The Masiello Group by June 17, 2025; (4) proposed dates for her deposition and a meet and confer regarding outstanding discovery disputes; and (5) "transmitted USD $1,350 (20% of the $6,750 sanction) to [The Masiello Group] via overnight post" on "June 6, 2025." ECF No. 104 at 1-3.

On June 10, 2025, The Masiello Group filed a status report indicating that it had yet to receive the tax preparer authorizations or the partial sanctions payment. *See* ECF No. 105 at 1-2. It also highlighted that Goodwill had yet to furnish an updated privilege log as she was ordered to do in January 2025, and that her representation that she had requested her tax returns from the IRS on December 30, 2024, was inconsistent with her representation during a status conference on December 20, 2024, that she had submitted those requests on December 5, 2024. *See id.*

Following The Masiello Group's status report, I issued the following order to show cause:

> Based on The Masiello Group's representations in its status report (ECF No. 105) about the purported inaccuracies in [Goodwill's] earlier status report (ECF No. 104), [Goodwill] is ORDERED to show cause in writing by June 24, 2025, why her case should not be dismissed for her repeated and ongoing failure to comply with the Court's orders. [Goodwill's] counsel is further ORDERED to show cause in writing by June 24, 2025, why disciplinary proceedings should not be initiated against him for his purported lack of candor. *See* Local Rule 83.3(a); Me. R. Prof. Conduct 3.3(a). [Goodwill] and her counsel are instructed to support any factual assertions in their responses with affidavits and exhibits.

ECF No. 106.

On June 24, 2025, Goodwill filed a response to the order to show cause, *see* ECF No. 107, which I ultimately struck because Goodwill's counsel was administratively suspended from the practice of law at the time of filing, *see* ECF No. 109. I nevertheless extended the deadline to respond to the order to show cause to July 9, 2025, to give Goodwill's counsel "an opportunity to resolve his administrative suspensions." *Id.*

On July 9, 2025, Goodwill again filed her response. *See* ECF No. 110. She indicated that there was nothing untrue about the representations in her status report because she had filed two separate requests for her tax returns with the IRS and The Masiello Group had confirmed receipt of the partial payment and the authorizations to obtain her tax returns from her preparers. *See id.* at 2-3. She further indicated that the parties had recently conferred and "acknowledged an intent to collaborate in a dual-track settlement/discovery process." *Id.* at 4.

Attached to her response, Goodwill included a United States Postal Service receipt and mailing label, both of which were dated June 9, 2025, to prove that she mailed the partial payment and signed authorizations to The Masiello Group. *See* ECF No. 110-1. She also attached responses from the IRS to her two requests for copies of her tax returns, both of which indicated that the IRS couldn't "provide any of the items [she] requested." ECF No. 110-2 at 4, 9. And finally, she attached a copy of the partial payment check and an email thread between her counsel and counsel for The Masiello Group confirming receipt of the partial payment and authorizations on June 13, 2025. *See* ECF Nos. 110-3, 110-4.

On July 10, 2025, The Masiello Group responded that it still had not received Goodwill's tax returns or the revised privilege log I had ordered her to provide back in January 2025. *See* ECF No. 111 at 3. It also vehemently disputed Goodwill's suggestion that any plan or agreement had been reached regarding outstanding discovery. *See id.* at 2-4.

## II. Legal Standard

Fed. R. Civ. P. 37 gives the district court "a veritable arsenal of sanctions" when a party fails to comply with discovery obligations and orders, *Companion Health Servs., Inc. v. Kurtz*, 675 F.3d 75, 84 (1st Cir. 2012) (cleaned up), from assessing reasonable costs to dismissing some or all of a party's claims, *see* Fed. R. Civ. P. 37(b)(2); *see also* Fed. R. Civ. P. 16(f)(1)(C) (providing that a court may impose sanctions, including Rule 37 sanctions, "on its own" "if a party or its attorney . . . fails to obey a scheduling or other pretrial order"). In considering whether and what Rule 37 sanctions may be appropriate, a court should weigh factors such as "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015).

## III. Discussion

To reiterate, in my May 2025 order granting in part The Masiello Group's motion for sanctions, I found that (1) Goodwill's discovery violations were persistent and severe where, years into the case, she had yet to produce basic discovery or

comply fully with my discovery orders; (2) she had prejudiced The Masiello Group's ability to defend this action and wasted limited judicial resources; (3) her misconduct appeared to be deliberate after she failed to heed multiple warnings; and (4) her excuses and attempts to deflect blame were unavailing. ECF No. 99 at 6, 9. It was only my hope that a monetary sanction might prompt Goodwill to get back on track before the close of discovery that stopped me from recommending the dismissal of her case. *Id.* at 9-10.

Goodwill's subsequent conduct has made it clear that lesser sanctions will not suffice. After countless hearings, orders, warnings, and status reports, no meaningful progress has been made in this case since Goodwill's counsel entered his appearance in July 2024.

Goodwill still has not produced her tax returns, despite indicating that she was ready to do so after recovering them from her hard drive; it took her half a year to comply with my December 2024 order to produce signed authorizations to The Masiello Group to obtain her tax returns from her preparers; she still has not provided the updated privilege log as I ordered her to do back in January 2025; she has not complied with my previous sanctions order, which required her to pay The Masiello Group $6,750 by June 6, 2025[1]; and the time for remedying these shortcomings has run out where the already extended discovery period has now closed.

---

[1] Goodwill's proposal to pay the sanction in installments is not, in and of itself, unreasonable. But the fact that she unilaterally submitted a partial payment after the deadline without first seeking the Court's permission or The Masiello Group's agreement is problematic.

9

When confronted with these failings and given an opportunity to explain herself, Goodwill—and her counsel—can only cast blame on The Masiello Group and the Court, saying that she has "dedicated significant time to addressing character attacks and undue scrutinization" and simply "cannot comply" with her discovery obligations with the "guillotine" of dismissal hanging over her head. ECF No. 110 at 1-2, 4.

That Goodwill continues to blame others for a mess entirely of her own making convinces me this case can go no further. Her stubborn refusal to comply with my discovery orders and fulfill her discovery obligations after multiple warnings and opportunities for correction is precisely the sort of "severe, repeated, and deliberate" conduct warranting the "drastic sanction" of dismissal with prejudice. *AngioDynamics, Inc.*, 780 F.3d at 435-36. "[N]o lesser sanction," at this point, would accomplish "the twin goals of penalty and deterrence." *Id.* at 436.

I must also note, as a final matter, that Goodwill's counsel has been repeatedly untruthful in his representations to the Court. When Goodwill's counsel misrepresented his communications to the Clerk's Office after showing up late to a hearing in December 2024, I "emphatically" reminded him of his duty of candor to the Court. ECF No. 80 at 1-2. But in the June 6, 2025, status report he filed on Goodwill's behalf, he declared, "under penalty of perjury," that he had furnished signed authorizations and transmitted a partial sanctions payment to The Masiello Group "via overnight post" "[o]n June 6, 2025." ECF No. 104 at 1-3. These representations are directly contradicted by his subsequent filing of his USPS receipt and shipping

10

label dated three days later on June 9, 2025, and the email exchange between him and The Masiello Group's counsel confirming receipt of the authorizations and partial payment on June 13, 2025. *See* ECF Nos. 110-1, 110-3, 110-4.[2] Likewise, his representations in the July 9, 2025, response to the order to show cause that the parties had "resolved" the issues raised in prior status reports and were "exchanging proposed terms for settlement," ECF No. 110 at 2, were immediately and vehemently contradicted by The Masiello Group, ECF No. 111 at 1-4.

Goodwill's counsel's repeated transgressions of his duty of candor to the Court raise substantial questions about his honesty and trustworthiness as a lawyer and should be referred to the Maine Board of Overseers of the Bar for potential disciplinary action. *See* Me. R. Prof. Conduct 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."); Local Rule 83.3(a) ("This Court adopts as its standard for professional conduct the Maine Rules of Professional Conduct adopted by the Supreme Judicial Court, as amended from time to time by that Court."); Local Rule 83.3(d) (providing a process to appoint special counsel to initiate formal disciplinary proceedings in this Court but noting that the rule does not prohibit "the Court from taking other action it deems appropriate"); *cf.* Me. R. Prof. Conduct 8.3(a) ("A lawyer who knows another lawyer has committed a violation of the Maine Rules of Professional Conduct that raises a

---

[2] The Masiello Group highlighted this misrepresentation in its response to Goodwill's first response to the order to show cause. Nevertheless, even after her first response was stricken, Goodwill did not take the opportunity to explain the issue in her subsequent response.

11

substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority.").

## IV. Conclusion

For the foregoing reasons, I recommend that the Court **DISMISS** Goodwill's complaint with prejudice pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) as a sanction for her discovery noncompliance. I also recommend that the Court direct the Clerk's Office to send information about Goodwill's counsel's lack of candor to the Maine Board of Overseers of the Bar.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: December 19, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge